**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT JACKSON HORAN, JR. on Behalf of Himself And All Others Similarly Situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. _____** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | **Div. _____** |
| | ) | |
| **DRAFTKINGS, INC.** | ) | |
| | ) | |
| 225 Franklin Street | ) | |
| 26th Floor | ) | |
| Boston, MA 02110 | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Robert Jackson Horan Jr., on behalf of himself and all others similarly situated in the State of Missouri, brings this Class Action Complaint against Defendant DraftKings, Inc.

## NATURE OF THE CASE

1.     This is a Class Action Complaint against Defendant DraftKings, Inc. ("DraftKings"), a company operating a Daily Fantasy Sports ("DFS") website in a manner that violates Missouri law.

2.     Plaintiff Horan brings this action on his own behalf and on behalf of Missouri consumers who, like himself, have sustained ascertainable losses arising out of DraftKings' systematic and continued violation of Missouri law.

3.     In short, DraftKings is independently operating an illegal online sports betting business within the State of Missouri.  DraftKings purposefully engages in commerce within the

1

State of Missouri and intentionally does business with Missouri consumers.

4.     To avoid the clear statutory prohibitions against "contests of chance" under the Missouri Revised Statutes, which include any activity wherein an individual "risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome," DraftKings has duplicitously defined its sports betting operations as DFS and DFS "contests."

| Sport | Contest | Entry Fee | Total Prizes | Entries | Live | |
|---|---|---|---|---|---|---|
| | NFL $6M Millionaire Maker [$1M to 1st] | $20 | $6,000,000 | 68.6K/343.5K | Sun 12:00p | ENTER |
| | NFL $1M Kickoff Million [$1 Million Guaranteed] (Thu) | $3 | $1,000,000 | 198.7K/383.3K | 10:53:09 | ENTER |
| | NFL $1.25M Play-Action [$1.25 Million Guaranteed] | $3 | $1,250,000 | 102.1K/479.1K | Sun 12:00p | ENTER |
| | NFL $150K Slant [$150,000 Guaranteed] (Thu) | $9 | $150,000 | 8827/19.1K | 10:53:09 | ENTER |
| | $15M Fantasy Football World Champ Qualifier #95 (Thu) | $9 | 1 Prize + $10,000 | 3620/11.6K | 10:53:09 | ENTER |
| | $15M Fantasy Football World Champ Qualifier #94 (Thu) | $3 | 1 Prize + $10,000 | 13.2K/34.9K | 10:53:09 | ENTER |
| | NFL $450K Slant [$450,000 Guaranteed] | $9 | $450,000 | 9589/57.4K | Sun 12:00p | ENTER |
| | NFL MASSIVE $25 Double Up [$850,000 Guaranteed] | $25 | $850,000 | 7424/38.4K | Sun 12:00p | ENTER |
| | NFL $700K Blitz [$100,000 to 1st] | $300 | $700,000 | 270/259G | Sun 12:00p | ENTER |
| | $15M Fantasy Football World Champ 2x Qualifier #97 & 98 | $3 | 2 Prizes + $17,000 | 9665/68.6K | Sun 12:00p | ENTER |
| | $15M Fantasy Football World Champ Qualifier #99 | $9 | 1 Prize + $10,000 | 828/11.6K | Sun 12:00p | ENTER |
| | $15M Fantasy Football World Champ Qualifier #100 | $20 | 1 Prize + $10,000 | 726/5235 | Sun 12:00p | ENTER |
| | NBA $1M Return to the Court [$100,000 to 1st] | $20 | $1,000,000 | 2088/57.2K | Wed 6:00p | ENTER |
| | NHL $30K BIG Power Play [$10K to 1st] | $1,060 | $30,000 | 15/30 | 09:28:09 | ENTER |
| | NBA $200K Crossover [$200,000 Guaranteed] | $27 | $200,000 | 1717/8450 | 09:28:09 | ENTER |
| | NBA $250K Sharpshooter [$250,000 Guaranteed] | $3 | $250,000 | 30.4K/95.8K | 09:28:09 | ENTER |
| | NBA $100K 3-Ball [$20,000 to 1st] | $300 | $100,000 | 76/370 | 09:28:09 | ENTER |
| | NFL $250K Gridiron [$250,000 Guaranteed] (Thu) | $27 | $250,000 | 4608/10.5K | 10:53:09 | ENTER |
| | NFL $125k Blitz [$20,000 to 1st] (Thu) | $300 | $125,000 | 155/463 | 10:53:09 | ENTER |
| | NHL $65K Sniper [$65,000 Guaranteed] | $3 | $65,000 | 4988/24.9K | 09:28:09 | ENTER |
| | NHL $50K Face-Off [$50,000 Guaranteed] | $27 | $50,000 | 344/2112 | 09:28:09 | ENTER |

2

5.      The DFS "contests" available for selection on the DraftKings website, include teams and individuals from a wide variety of American professional sports leagues, such as the PGA, NCAA Football, NCAA Basketball, the NFL, the NBA, MLB, and the NHL.

6.      Unlike season-long fantasy sports, wherein participating individuals must participate in an extensive draft process, and maintain a core roster over a period of months, including trades, roster moves, and injury replacements, individuals participating in a DraftKings DFS "contest" need only complete the selection of a single daily roster, which may include players already selected by other participants.

7.      Once a participant has selected a roster, DraftKings then accepts wagers from the participant and other bettors for the specific sporting event selected using a scheme they created that assigns values (points) based upon the performance of each athlete and team which is involved in the particular contest selected by the participant.

8.      After the sporting event has concluded, DraftKings then utilizes its scoring scheme to award points based upon the individual performances of each athlete selected by the participating individuals.

9.      Prior to the commencement of the subject sporting event(s), bettors select an entry fee, which may be in multiple amounts up to and including $5,000, and the number of games or teams they wish to play. If their roster generates more points than their rivals on that day or week, they win all of the money in the pot, minus the cut retained by DraftKings, usually 6.5%.

10.     DraftKings claims, in error, that its bookmaking operation was made legal by the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA").

11.    On its website, www.draftkings.com, DraftKings mischaracterizes its DFS "contest" enterprise as a "game of skill," as opposed to an illegal "contest of chance." Specifically, DraftKings.com states, "We are a US-based skill games company, and all of our contests are operated 100% legally under United States and Canada law. The US Government and 45 of the 50 states consider fantasy sports a game of skill."



12.     In referring to DFS enterprises, such as DraftKings, former Congressman Jim Leach, one of the original sponsors of the UIGEA, stated that the UIGEA, an anti-gambling statute, was supposed to stop gambling on the Internet – not promote it.

13.     Former Congressman Leach told the Associated Press: "There is no credible way fantasy sports betting can be described as not gambling." "Only a sophist can make such a claim." The federal regulation is codified at 31 U.S.C. 5361, *et seq*. The Act expressly provides that it shall not be construed as altering, limiting, or extending any state law that prohibits, permits, or regulates gambling within the United States.[1]

14.     DrafKings' operations are also unlawful under Missouri's criminal provisions.

15.     DraftKings defines its sports betting scheme as DFS "contests" in a deceptive attempt to circumvent Missouri Revised Statutes Section 572.010, *et seq*., which expressly prohibits profiting from a "game of chance," which includes any contest which is dependent "upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome."

16.     Gambling in Missouri is made a criminal offense under Missouri Revised Statutes Sections 572.030 – 572.070, which prohibit, among other acts, "engaging in bookmaking to the extent that [it] receives or accepts in any one day more than one bet and a total of more than one hundred dollars in bets."

17.     Missouri Revised Statutes Section 572.010(2) defines "bookmaking" as "advancing gambling activity by unlawfully accepting bets from members of the public as a business rather than in a casual or personal fashion, upon the outcomes of future contingent

---

[1] 31 U.S.C. § 5361(b).

5

events."

18.     Under Missouri Revised Statutes Section 572.010(3), a "contest of chance" is defined as "any contest, game, gaming scheme, or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that the skill of the contestants may also be a factor therein."

19.     Missouri consumers, like Plaintiff Horan and Class Members, can seek to recover damages from DraftKings in the form of restitution for lost wagers.

20.     Missouri Revised Statutes Section 434.030 authorizes any person who has suffered gambling-related losses to recover such losses by a civil action.

21.     Plaintiff Horan and Class Members are entitled, as a matter of law, to recover the money they lost, and in addition, are entitled to any and all fees that accrued to DraftKings on account of the gaming contracts being void.

## PARTIES, JURISDICTION AND VENUE

22.     Plaintiff Robert Jackson Horan Jr. is a resident of St. Louis County, Missouri, and is a citizen of the State of Missouri. He brings this action on behalf of himself individually, and on behalf of a Class of persons similarly situated as described in the Class Definition below. Plaintiff Horan wagered twenty dollars ($20) on DraftKings on August 13, 2015 to participate in a PGA-based DFS "contest."  Plaintiff Horan suffered a monetary loss as a result of his August 13, 2015 wager.  Plaintiff Horan made thirteen (13) wagers on DraftKings during August 2015 as a result of which he suffered monetary losses.

23.     Defendant DraftKings, Inc. is a Delaware corporation with its headquarters and principal place of business located at 225 Franklin Street, 26th Floor, Boston, Massachusetts 02110. Defendant DraftKings is not registered to do business within the State of Missouri despite

6

regularly engaging in commerce in the State of Missouri with Missouri consumers.

24.     DraftKings offers daily and weekly fantasy sports contests for cash prizes in all of the five major sports (MLB, NHL, NFL, NBA and PGA) as well as college football and basketball. DraftKings' rapid-fire DFS "contests" are a much shorter duration than the traditional season-long fantasy sports leagues and require no team management after the draft. Further, DraftKings' salary cap draft format takes just minutes to complete, unlike the hours-long snake drafts in traditional fantasy sports leagues. Finally, DraftKings offer new DFS "contests" every day of the season, and the company's winners are crowned nightly. Payouts happen immediately after the games.



25.     DraftKings conducts business throughout the State of Missouri.

26.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332 (D), because the Putative Class consists of 100 or more members; the amount in controversy exceeds five million ($5,000,000) exclusive of costs and interest, and minimal diversity exists.

27.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Horan's claims occurred in this district. Missouri is the proper venue.  Venue is proper in the Eastern Division because Plaintiff Horan is a resident of St. Louis County, Missouri, and a substantial part of the events or omissions giving rise to Plaintiff Horan's claims occurred in this division.

## FACTUAL BACKGROUND

28.     Defendant DraftKings is operating an illegal online sports betting business within the State of Missouri.

29.     DraftKings accepts wagers from bettors for various sporting events using a scheme they created that assigns values (points) based upon the performance of athletes engaged in amateur and professional athletic competitions.

30.     After the sporting events are concluded, DraftKings calculates a score using the system it created that awards points based upon the various individual college and professional athletes' performance. DraftKings then pays the bettors who have accumulated the highest total number of points.

31.     Plaintiff Horan is an individual who has utilized DraftKings' website. He has incurred monetary losses as a result of said use. Thus, Defendant DraftKings is indebted to Plaintiff Horan for the money so paid, wagered and lost.

32.     DraftKings is able to operate its website because it illegally and deceptively markets and represents DFS "contests" as a game of skill, like chess or the stock market. It is also similar to pari-mutuel horse race wagering, in that players compete against each other for prize pools and DraftKings takes its fee from the prize pool itself.

**WHY IS IT LEGAL?**      The legality of daily fantasy sports is the same as that of season long fantasy sports. Federal Law and 45 of the 50 US States allow skill based gaming.

Daily fantasy sports is a skill game and is not considered gambling.

33.     Plaintiff Horan alleges that the DraftKings' gambling platform requires very little or no skill and that the outcome therefore "depends in a material degree upon an element of chance." In fact, many of DraftKings' customers lack even a rudimentary understanding of sports, or betting strategy in general, and yet participate in DraftKings' operations, and lose or

win based purely on luck.

34.   DraftKings' sports betting scheme is a "contest of chance" that involves little skill, and allows for the repetitive selection of individual players. As a result, the chance element predominates over any skill set.

35.   DraftKings attempts to induce consumer participation in its "contests" by advertising "Daily Fantasy Sports for Cash" and stating that individuals may "[c]ompete in 1-day contests and win! Welcome to the big time."



36.    DraftKings' sports wagering system involves selecting a set number of athletes that will play in a single sporting event.

37.    DraftKings has established a points system that correlates with the athletes' performance during a single athletic event.

38.    DraftKings determines which athletes its bettors may select, and then assigns a handicap (spread) based upon the athletes' perceived potential to score points.

39.    DraftKings eliminates almost the entire element of skill by establishing a handicap (similar to a point spread) for a limited number of athletes it determines can be used for a particular waging event, and allowing each individual bettor to select the same player, without eliminating said player's availability upon selection.

40.    By establishing a "spread" for each athlete and limiting the number of athletes the bettors can use, DraftKings is promoting and engaging in a gambling scheme predominately based upon chance.

41.    Missouri's penal law and civil law (and the UIGEA) prohibit DraftKings' sports betting scheme because it is a contest of chance.

42.    DFS "contests," including the sports betting schemes implemented within the State of Missouri by DraftKings, return casino-type "odds" and involve little skill.

43.    In DFS "contests," as engaged in by DraftKings, a player is equally as likely to win with a randomly generated roster as a player is to win with a carefully crafted roster.

44.    DraftKings' gambling scheme is a contest of chance because an individual athlete's performance (especially in **a single game)** will always be affected by material elements of chance that affect scoring and winning outcomes, including variables such as player injury, fumbles, weather conditions, controversial officiating, suspension, the abilities and performance

10

of the opposing team, or other off-field circumstances.

45.     Bettors have no measure of control over all of the variables that affect the performance of the college and professional athletes, rendering DraftKings' scheme a contest of chance.

46.     DraftKings represents, advertises and promotes that its gambling scheme is not illegal.

 BASICS

What Is DraftKings?

Is Playing On DraftKings Legal?

You must be at least 18 years of age to open an account, participate in contests, or win prizes offered by the Website. In jurisdictions, territories, and locations where the minimum age for permissible use of the Website is greater than 18 years old, you must meet the age requirement in your local jurisdiction or territory. You must be at least 19 years of age at time of contest registration if you are a legal resident of Alabama or Nebraska. Legal residents physically located in any of the 50 states and Washington DC, excluding Arizona, Iowa, Louisiana, Montana, Nevada, and Washington are eligible to open an account and participate in contests offered by the Website. Legal residents of Arizona, Iowa, Louisiana, Montana, Nevada, and Washington (the "Excluded States") are ineligible for prizes offered by the Website. Residents of the Excluded States are eligible to open and maintain accounts on the Website for use only in games that do not offer prizes. Legal residents of Canada are eligible to open an account and participate in contests offered by the Website.

47.     DraftKings' representation that the UIGEA legalized bookmaking and gambling under the guise of "fantasy sports" is false and misleading.

48.     The UIGEA did not legalize fantasy sports; it merely provided an exemption to banks from being held liable for processing transactions relating to certain fantasy sports.

49.     The UIGEA was enacted to regulate banks and other payment processors, not bookmakers.

50.     Under the UIGEA's definition, unlawful Internet gambling means "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet" that is illegal under federal, state, or tribal law.

51.     Missouri law prohibits sports betting schemes, including DraftKings' DFS "contests" scheme, and prohibits DraftKings from accepting payments from or entering into contracts with persons in Missouri.

## INVALIDITY OF ARBITRATION PROVISION AND TERMS OF USE

52.    DraftKings' "Terms of Use" is not a valid, enforceable contract.

53.    Plaintiff and the Class were fraudulently induced into providing money to DraftKings because DraftKings misrepresented that its DFS "contests" constituted a game of skill. However, DFS "contests" are purely a contest of chance, and is thus illegal gambling under Missouri law.

54.    DraftKings' purported "Terms of Use" are void under Missouri law.  The "Terms of Use" are a purported contract in furtherance of illegal sports gambling and are void under Missouri law pursuant to Missouri Revised Statute Section 572.010, *et seq*.

55.    In addition, the so-called "Terms of Use" do not constitute a valid, mutual agreement because the promises made by DraftKings are illusory. Indeed, there is no restriction on DraftKings' ability to terminate the "agreement" or to refuse to perform. For example, the so-called "Terms of Use" provide that DraftKings and related individuals such as officers and directors are released from any liability for any claim by the user "whatsoever": "By entering into a Contest or accepting any prize, entrants, including but not limited to the winner(s), agree to indemnify, release and to hold harmless [DraftKings], its parents, subsidiaries, affiliates and agents, as well as the officers, directors, employees, shareholders, and representatives of any of the foregoing entities (collectively the "Released Parties"), from any and all liability, claims or actions of any kind whatsoever, including but not limited to … [examples of various types of liability listed]."

56.    Another reason why the so-called "Terms of Use" consitute an illusory contract is that it purports to reserve to DraftKings the right to deny service to any user for any reason "whatsoever": "[DraftKings] reserve[s] the right, in their sole and absolute discretion, to deny

any contestant the ability to participate in head-to-head contests for any reason whatsoever." Thus, DraftKings is not bound to any performance obligation.

57.     Yet another reason why the so-called "Terms of Use" constitute an illusory contract is that it purports to give DraftKings the right, "without prior notice," to "revoke any or all of your rights granted hereunder." Thus, once again, DraftKings is not bound to any performance obligation.

58.     The "Terms of Use" purport to require arbitration, but gives DraftKings the exclusive right to revoke the arbitration provision because it states that, "Any claim or dispute between you and [DraftKings] that arises in whole or in part from the Terms of Use, the Website or any Contest shall be decided exclusively by a court of competent jurisdiction located in Suffolk County, Massachusetts."

59.     In addition, a user only has to check a box saying he or she has read the "Terms of Use" to sign up for the website, and the deposit of money and entry into contests is done through separate transaction.

60.     The "Terms of Use" are procedurally and substantively unconscionable.

61.     As a direct and proximate result of the actions described above, Plaintiff Horan and Class Members cannot be bound by DraftKings' "Terms of Use," which are void as against public policy and void as an illusory contract.

## CLASS ALLEGATIONS

62.     A class action is the superior method of adjudication of Plaintiff Horan's claims as many similarly situated Missouri consumers have been identically affected by DraftKings' illegal DFS "contests." The Putative Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or

defenses of the representative party are typical of the claims or defenses of the Class, and the representative party will fairly and adequately protect the interests of the Class.

63.     This action satisfies all of the requirements of Federal Rule of Civil Procedure 23, including numerosity, commonality, typicality, adequacy, predominance and superiority.

64.     Numerosity: the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. News accounts discuss how many millions of users compete on DraftKings' website.

65.     Commonality: the claims made by Plaintiff Horan meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the class wide litigation. These shared questions predominate over individual questions, and they include, without limitation:

     a.  Whether Plaintiff Horan and Class Members have entered into contracts with DraftKings within the past five (5) years;

     b.  Whether Plaintiff Horan and Class Members have entered into contracts with DraftKings within the past three (3) months;

     c.  Whether such contracts are *per se* void under Missouri law;

     d.  Whether Plaintiff Horan and Class Members paid monies to DraftKings in consideration of such contracts;

     e.  Whether DraftKings' DFS "contests" constitute contests of chance under Missouri law;

     f.  Whether DraftKings' operations violate Missouri criminal law;

     g.  Whether DraftKings' operations violate Missouri civil law;

h.  Whether Plaintiff Horan and Class Members are entitled to restitution and recovery of lost wagers from DraftKings;

i.  Whether DraftKings fraudulently induced Plaintiff Horan and Class Members into using its website under false pretenses, through material misrepresentations and/or material omissions;

j.  Whether DraftKings' actions constitute an unfair and/or deceptive practice under the Missouri Merchandising Purchases Act ("MMPA");

k.  Whether DraftKings converted Plaintiff Horan's and Class Members' funds;

l.  Whether DraftKings has been unjustly enriched at the expense of Plaintiff Horan and Class Members;

m.  Whether Plaintiff Horan and Class Members have been damaged;

n.  Whether DraftKings is required to disgorge all monies received as a result of illegal gambling in violation of Missouri law; and

o.  Whether the "Terms of Use" are void as against public policy, unconscionable, illusory, fraudulent and/or otherwise invalid.

66.  Typicality: Plaintiff Horan's claims are typical of those of the other Class Members because Plaintiff Horan, like every other Class Member, was induced to use DraftKings' site based on false and misleading advertisements that DFS "contests" constituted a game of skill when, in fact, it is a contest of chance, thus constituting illegal gambling under Missouri law.

67.  The claims of Plaintiff Horan are furthermore typical of other Class Members because he makes the same claims as other Class Members; and Plaintiff Horan's claims and those of the Class Members are based upon the same legal theories, and arise out of the same

15

practices and course of conduct engaged in by DraftKings. Plaintiff Horan has an interest in seeking compensation from DraftKings on behalf of all Class Members.

68.     Adequacy: Plaintiff Horan will fairly and adequately represent and protect the interests of his fellow Class Members.  Further, Plaintiff Horan has no conflicts of interest with his fellow Class Members. In addition, Plaintiff Horan has retained counsel on behalf of himself and his fellow Class Members who are experienced class action attorneys that will zealously pursue this litigation.

69.     Superiority: The class action device is the only appropriate method for fair and efficient adjudication of the claims at issue in this case. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

70.     The nature of this action and the nature of Missouri law makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff Horan and Class Members for the wrongs alleged because DraftKings would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the cost of individual suits could would prove prohibitive relative to potential recovery; proof of a common

16

course of conduct to which Plaintiff Horan was exposed is representative of that experienced by each Class Member and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

71.     The Proposed Class is described as follows:

> **"All Missouri citizens who participated in Defendant DraftKings' DFS "contests," deposited money in a DraftKings account, and competed in any contest within the last five years."**

72.     Plaintiff Horan reserves the right to modify or amend the Class Definition and to modify, amend, add or remove proposed subclasses, before the Court determines whether certification is appropriate and as the Parties engage in discovery.

73.     Excluded from the Class are:

a.   DraftKings and any entities in which DraftKings has a controlling interest;

b.   Any entities in which DraftKings' officers, directors or employees are employed and any of the legal representatives, heirs, successors, or assigns of DraftKings;

c.   The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.   All persons or entities that properly execute and timely file a request for exclusion from the Class;

e.   Any attorneys representing the Plaintiff or the Class.

## COUNT I
## VIOLATION OF R.S.Mo § 572.010, *et seq.*

74.     Plaintiff Horan and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding Paragraphs of this Complaint.

75.     Plaintiff Horan asserts this cause of action for violation of Missouri Revised Statutes Section 572.010, *et seq*., by virtue of the private right of action contained in Missouri Revised Statute 434.030.

76.     Section 572.010(2) of the Missouri Revised Statutes defines "bookmaking" as "advancing gambling activity by unlawfully accepting bets from members of the public as a business rather than in a casual or personal fashion, upon the outcomes of future contingent events."

77.     Section 572.010(3) of the Missouri Revised Statutes defines a "contest of chance" as "any contest, game, gaming scheme, or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that the skill of the contestants may also be a factor therein."

78.     Section 572.010(4) of the Missouri Revised Statutes defines "gambling" as "risk[ing] something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome."

79.     DraftKings' contract for DFS "contests" is not based upon skill, but instead constitutes a contest of chance and, thus, illegal gambling under Missouri law. As such, those contracts violate Missouri Revised Statutes Sections 572.010, *et seq.* and, therefore, are void as a matter of law.

80.     DraftKings is indebted to Plaintiff Horan and Class Members for the money so lost and paid, or converted the goods won from Plaintiff Horan and Class Members and put to its own use.

81.     Missouri Revised Statutes Section 434.030 authorizes any person who has suffered gambling-related losses to recover such losses by a civil action.

82.     As a direct and proximate result of DraftKings' violation of Missouri Revised Statutes Sections 572.010, *et seq.*, Plaintiff Horan and Class Members were damaged and are entitled to recover all monies lost as a result of DraftKings' void gambling contracts as allowed under Missouri Revised Statutes Section 434.030.

**COUNT II**
**VIOLATION OF R.S.Mo § 407.010, *et seq*.**
**THE MISSOURI MERCHANDISING PRACTICES ACT**

83.     Plaintiff Horan and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

84.     This cause of action is alleged under Section 407.025 of the Missouri Revised Statutes, the MMPA, which affords a private right of action to consumers within the State of Missouri based upon a defendant's unfair and/or deceptive practices.

85.     Plaintiff and Class Members were fraudulently induced into participating in Defendant's DFS "contests" for their own personal, family, or household use or purpose, during the Class Period.

86.     DraftKings engaged in deceptive acts and unfair practices described *supra* in connection with the marketing and sale of its DFS "contests" in trade or commerce in the State of Missouri. Plaintiff Horan and Class Members were injured by DraftKings when they were induced into participating in Defendant's illegal DFS "contests."



WHY IS IT LEGAL?     The legality of daily fantasy sports is the same as that of season long fantasy sports. Federal Law and 45 of the 50 US States allow skill based gaming.

Daily fantasy sports is a skill game and is not considered gambling.

87.     The deceptive acts and unfair practices committed by DraftKings, include but are not limited to: (1) misrepresentations regarding the purported legality of its DFS "contests" under Missouri law; (2) misrepresentations of its DFS "contests" as "games of skill;" (3) fraudulently inducing the participation of Plaintiff Horan and Class Members in an illegal contest of chance under Missouri law; and (4) concealing, suppressing and/or omitting material facts about the legality of its conduct.

88.     DraftKings engaged in the act, use, and employment of deception, false pretenses, misrepresentation, unfair practices, and the concealment, suppression, and omission of material facts in connection with the offering for sale and sale of DFS "contests," including the use of ads such as the following:



89.     DraftKings attempts to induce consumer participation in its "contests" by advertising "Daily Fantasy Sports for Cash" and stating that individuals may "[c]ompete in 1-day contests and win! Welcome to the big time."



90.     DraftKings made public misrepresentations regarding the purported legality of its DFS "contests," including statements within the Frequently Asked Questions ("FAQ") section of its website, which either omitted material information that rendered the statements it made misleading, or affirmatively misrepresented the real nature of the DFS "contests" offered.

 **BASICS**

What Is DraftKings?

Is Playing On DraftKings Legal?

You must be at least 18 years of age to open an account, participate in contests, or win prizes offered by the Website. In jurisdictions, territories, and locations where the minimum age for permissible use of the Website is greater than 18 years old, you must meet the age requirement in your local jurisdiction or territory. You must be at least 19 years of age at time of contest registration if you are a legal resident of Alabama or Nebraska. Legal residents physically located in any of the 50 states and Washington DC, excluding Arizona, Iowa, Louisiana, Montana, Nevada, and Washington are eligible to open an account and participate in contests offered by the Website. Legal residents of Arizona, Iowa, Louisiana, Montana, Nevada, and Washington (the "Excluded States") are ineligible for prizes offered by the Website. Residents of the Excluded States are eligible to open and maintain accounts on the Website for use only in games that do not offer prizes. Legal residents of Canada are eligible to open an account and participate in contests offered by the Website.

91.     As a direct and proximate result of the above-described unlawful practices, Plaintiff Horan and Class Members suffered ascertainable loss of money due to their unknowing participation in DraftKings' illegal DFS "contests of chance." Further, Plaintiff Horan and Class Members lost money as a result of their participation in such contests.

92.     Plaintiff Horan and Class Members assert a claim for actual damages, punitive damages, recovery of reasonable attorneys' fees, restitution, disgorgement, and other relief under the MMPA, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce."

**COUNT III**
**UNJUST ENRICHMENT**

93.     Plaintiff Horan and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

94.     DraftKings has improperly and wrongfully taken possession of, profited and/or encumbered money from Plaintiff Horan and Class Members through an illegal gambling scheme, *i.e.* DFS "contests."

22

95.     By its actions in receiving payment and money from Plaintiff Horan and Class Members participating in the illegal gambling scheme known as DFS "contests," a benefit was conferred upon DraftKings to which DraftKings was not entitled yet still received and appreciated; and such benefit was conferred, premised on fraud, misrepresentation and/or bad faith.

96.     By DraftKings' improper and wrongful procuring of money under void gaming contracts, DraftKings was unjustly enriched to the commensurate financial and economic detriment of Plaintiff Horan and Class Members.

97.     DraftKings accepted and retained the benefit conferred upon it, despite its knowledge that it is illegal to participate in gambling in the State of Missouri and accept monies under a void gaming contract.

98.     Retaining the non-gratuitous benefits conferred upon DraftKings was unjust an inequitable. Therefore, DraftKings is liable for the disgorgement and payment of restitution of the benefits it retained, with applicable interest.

<u>**COUNT IV**</u>
<u>**CONVERSION**</u>

99.     Plaintiff Horan and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

100.     DraftKings has and continues to improperly and wrongfully exercise dominion and control over Plaintiff Horan's and the Class Members' personal property, namely fees and monies lost while participating in DraftKings' illegal DFS "contests."

101.     Plaintiff Horan and Class Members had, and continue to have, an ownership interest in the fees and monies they paid to DraftKings as a result of the illegal DFS gaming

contract, *i.e.* illegal gambling.

102.    DraftKings has and continues to improperly and wrongfully exercise dominion and control over Plaintiff Horan's and the Class Members' personal property, *i.e.* money, for a significant and indefinite period of time, and Plaintiff Horan and the Class Members were harmed by DraftKings' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Horan and Class Members pray for judgment against Defendant DraftKings, Inc. and for the following relief:

A.    That the Court determine that this action may be maintained as a class action in the United States District Court for the Eastern District of Missouri (Eastern Division) under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff Horan be appointed a Class Representative, and that Plaintiff's counsel be appointed Class Counsel;

B.    That the Court find that DraftKings' practice of offering DFS "contests" within the State of Missouri constitutes the promotion of and engagement in illegal gambling and that DFS "contests" constitute a "contest of chance" under Section 572.010, *et seq.* of the Missouri Revised Statutes;

C.    That the Court order DraftKings to disgorge all sums paid, wagered, and lost by Plaintiff Horan and Class Members through their participation in DraftKings' illegal DFS "contests" during the Class Period;

D.    That DraftKings be found and ordered to pay to Plaintiff Horan and Class Members damages, including punitive damages, for its violations as permitted by the Missouri Merchandising Practices Act, as alleged in Count II;

24

E.   That Plaintiff Horan and Class Members recover their costs of the suit and attorneys' fees, as provided by law; and

F.   That Plaintiff Horan and Class Members have such other, further, and additional relief as the case may require and the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff Horan and Class Members demand a jury trial as to all issues so triable.

Date: October 30, 2015

Respectfully submitted,

**EDGAR LAW FIRM LLC**

John F. Edgar            Mo. 47128
(to be admitted to the Bar of the Court)
Boyce N. Richardson      Mo. 62509
(to be admitted to the Bar of the Court)
Alexander T. Ricke       Mo. 65132
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Telephone:    (816) 531-0033
Facsimile:    (816) 531-3322
Email: jfe@edgarlawfirm.com
        bnr@edgarlawfirm.com
        atr@edgarlawfirm.com

**SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP**
Garrett W. Wotkyns, AZ Bar No. 025887
(to be admitted *pro hac vice*)
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone:    (480) 428-0141
Facsimile:    (866) 505-8036
Email: gwotkyns@schneiderwallace.com

25

**SCHNEIDER WALLACE**
**COTTRELL KONECKY WOTKYNS LLP**
Kyle G. Bates, CA Bar No. 299114
(to be admitted *pro hac vice*)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone:      (415) 421-7100
Facsimile:       (415) 421-7105
Email: kbates@schneiderwallace.com

**BYRON CARLSON PETRI & KALB, LLC**
Chris Byron                    Mo. 47989
411 St. Louis Street
Edwardsville, Illinois 62025
Telephone:      (618) 307-4054
Facsimile:       (618) 655-4004
Email: CWB@BCPKLaw.com